# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NISKANEN CENTER,<br><br>    Plaintiff,<br><br>    v.<br><br>FEDERAL ENERGY REGULATORY COMMISSION,<br><br>    Defendant. | Civil Action No. 19-125 (JEB) |

## MEMORANDUM OPINION

This case involves a natural-gas pipeline slated to run hundreds of miles across three Mid-Atlantic states. Plaintiff Niskanen Center, which claims an interest in protecting private property rights, submitted a Freedom of Information Act request to the Federal Energy Regulatory Commission — the agency charged with regulating these interstate pipelines — seeking "any and all" information regarding the identity of landowners affected by the pipeline. Plaintiff maintains that this information will advance the public's interest in knowing whether FERC, consistent with its regulations, is ensuring that companies are notifying all affected landowners. The agency turned over a number of landowner lists but, citing privacy concerns, withheld the names and addresses of private citizens. Dissatisfied with these withholdings, Plaintiff filed suit, and the parties have now moved for summary judgment.

Following a status hearing at which the Court attempted to broker a compromise, Defendant offered to disclose the landowners' initials and street names (but not precise addresses). Finding that this latest proposal strikes the appropriate balance between the

1

competing public and private interests at issue here, the Court will deny Plaintiff's Motion and will grant Defendant's Motion as amended by this concession.

**I.      Background**

The backdrop for this case begins with the Natural Gas Act.  Under that statute, companies seeking to construct new interstate gas transportation must obtain a certificate of public convenience and necessity from FERC.  See 15 U.S.C. § 717f(c)(1)(A).  Notably, a certificate holder may exercise eminent-domain authority to acquire property rights to construct and operate its pipeline.  Id. § 717f(h).  To obtain such a certificate, a pipeline company must first comply with a number of federal regulations.  See 18 C.F.R. § 157.6.  As part of this directive, companies are required to "make a good faith effort to notify all affected landowners." Id. § 157.6(d).  They are obligated, moreover, to submit a list of relevant landowners to the agency.  Id.  FERC, in turn, issues a notice of the certificate application and publishes it in the Federal Register.  See, e.g., id. § 157.9.

In October 2015, Atlantic Coast Pipeline secured a certificate to construct and operate a natural-gas pipeline across West Virginia, Virginia, and North Carolina.  See ECF No. 12 (Pl. MSJ), Statement of Material Facts at 2.  The pipeline, according to Defendant, affects over 3,500 landowners.  See ECF No. 18-1 (Def. Resp. to Pl. SMF), ¶ 12.  Seventy-seven of them have homes within 50 feet of the pipeline right-of-way.  See Pl. MSJ, SMF at 3.

On October 29, 2018, Niskanen submitted a FOIA request to FERC seeking "any and all records and information" relating to the private landowners that ACP had identified.  See ECF No. 11 (Def. MSJ), Exh. A (October 29 Letter).  It also explicitly requested four landowner lists. Id. (lists 20160629-5197, 20160412-5248, 20151112-5341, 20151016-5227).  A few weeks later, on November 14, the agency released eight lists — three of the four lists that Plaintiff had

2

requested as well as five others. See Def. MSJ, Exh. B (FERC Nov. 14 E-mails); Pl. MSJ, SMF at 5. Although FERC disclosed the information of commercial and government entities in full, it treated that of private citizens differently. See Pl. MSJ at 7. In particular, Defendant, citing privacy concerns and FOIA Exemption 6, redacted the names and addresses of individuals. See ECF No. 11-1 (Def. Statement of Material Facts) at 1.

In response, Plaintiff filed an administrative appeal on December 18, attacking the use of the exemption. See Def. MSJ, Exh. C (Niskanen's Administrative Appeal). Specifically, it downplayed the privacy concerns that the agency had raised and maintained that full disclosure of the mailing lists would "shed light" on whether ACP was sending notice to all affected landowners. Id. at 3–4. Plaintiff, moreover, pointed out that Defendant had failed to release one of the lists that it had previously requested. Id. at 2 n.1 (noting missing list 20160629-2197).

FERC, in Plaintiff's telling, did not provide an adequate response to its appeal by FOIA's statutory deadline. See 5 U.S.C. § 552(a)(6)(A) (setting forth deadlines); ECF No. 1 (Complaint), ¶¶ 28–30. So, on January 18, 2019, Niskanen brought this suit. It was not until February 1 that FERC finally responded to Plaintiff's appeal and upheld the decision to redact the information of private citizens. See Def. MSJ, Exh. D (Response to Pl. Appeal) at 1. The agency also acknowledged that it had inadvertently neglected to disclose one of the lists Plaintiff had requested. Id. Shortly after, FERC produced a limited version of this list, again redacting the names and addresses of individuals. Id. Each party then filed a Motion for Summary Judgment regarding the propriety of Exemption 6.

Seeking to engineer a compromise between the parties for a limited disclosure of the property-owner lists, the Court convened a status conference. See Minute Order of Dec. 3, 2019. This tree, however, bore no fruit. After the hearing, Niskanen proposed that the Agency

produce: (1) the "correct initials of each individual property owner and corresponding street address"; and (2) "any and all information related to 'unavailable' affected landowner[s]." ECF No. 22 (Joint Status Report of Dec. 17, 2019) at 1–2. FERC, for its part, agreed only "to release the initials of landowners and street names (but not individual addresses)." Id. With the parties at an impasse, the Court is now primed to resolve this dispute.

## II.     Legal Standard

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary. See Neal v. Kelly, 963 F.2d 453, 456–57 (D.C. Cir. 1992).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); see Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In FOIA cases, the agency bears the ultimate burden of proof to demonstrate the adequacy of its search and that it properly withheld any records. See Defs. of Wildlife, 623 F. Supp. 2d at 88, 91. The Court may grant summary judgment based solely on information provided in an agency's affidavits or

4

declarations when they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

## III.    Analysis

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (quoting Rose v. Dep't of Air Force, 495 F.2d 261, 263 (2d Cir. 1974)). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978). The statute states that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this mandate, federal courts have jurisdiction to order the production or records that an agency improperly withholds. Id. § 552(a)(4)(B); DOJ v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 754–55 (1989).

Generally, an agency must conduct a search and make requested records available unless they fall within one of the statute's nine enumerated exemptions. See 5 U.S.C. §§ 552(a)(3)(A), (b)(1)–(9). When an agency withholds documents, it typically must explain what it withheld and

5

why. See, e.g., Vaughn v. Rosen, 484 F.2d 820, 825–28 (D.C. Cir. 1973). Further, because "disclosure, not secrecy, is the dominant objective of the Act," Rose, 425 U.S. at 361, the exemptions are narrowly construed. See DOJ v. Tax Analysts, 492 U.S. 136, 151 (1989).

Plaintiff does not dispute the adequacy of the Government's search in response to its FOIA request. Instead, it challenges only FERC's invocation of Exemption 6 to redact the names and addresses of individual landowners included in the lists. It also maintains that the agency could have segregated non-exempt material for production. The Court will tackle these issues in turn.

### A. Exemption 6

To start, an agency may withhold "personnel and medical files and similar files[,] the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The primary purpose of this exemption is "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." Prison Legal News v. Samuels, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (quoting Judicial Watch of Florida, Inc. v. DOJ, 365 F.3d 1108, 1124 (D.C. Cir. 2004)). In applying this provision, agencies and reviewing courts are instructed to perform a balancing act under which they must weigh "the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." Beck v. DOJ, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quoting Davis v. DOJ, 968 F.2d 1276, 1281 (D.C. Cir. 1992)).

As a threshold matter, Niskanen does not dispute that the information requested — i.e., names and addresses of private landowners — is contained within "personnel and medical files and similar files." ECF No. 12 (Pl. MSJ) at 12. Rather, it contends that the public interest in the

records it seeks outweighs any privacy interest of such individual landowners. Id. at 13–20. The remaining task for the Court, then, is to balance the relevant competing interests at issue.

1. *Privacy Interest*

First up is the privacy-interest side of the scale. Although FERC released a total of nine lists, it withheld the names and addresses of all private landowners. See Def. MSJ, FERC November 14 E-mails & Resp. to Pl. Appeal at 5. For information to be so withheld, its disclosure must "compromise a substantial, as opposed to *de minimis*, privacy interest." Multi Ag Media LLC v. Dep't of Agriculture, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (quoting Nat'l Ass'n of Retired Fed. Emps. v. Horner, 879 F.2d 873, 874 (D.C. Cir. 1989)). In this context, whether such an interest exists "depends upon the characteristic(s) revealed by virtue of being on the particular list and the consequences likely to ensue." Horner, 879 F.2d at 877. The threat to privacy, moreover, must be real rather than speculative. See Rose, 425 U.S. at 380 n.19 (explaining that Exemption 6 is "directed at threats to privacy interest more palpable than mere possibilities"); Carter v. Dep't of Commerce, 830 F.2d 388, 391 (D.C. Cir. 1987) (same).

Plaintiff leads off by stating that no privacy interest is at play because "none of the landowners chose to be on the requested lists." Pl. MSJ at 13. It also maintains that disclosing an individual's name would "not reveal any significant personal matters, financial information, beliefs, or characteristics." Id. The Court disagrees. For starters, the existence of a privacy interest does not turn on an individual's choice to be included on a government listing. Contrary to Niskanen's position, moreover, the D.C. Circuit has held that "the privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant." Horner, 879 F.2d at 875 (collecting cases); see Judicial Watch, Inc. v. FDA, 449 F.3d 141, 152 (D.C. Cir. 2006) (recognizing that releasing names and addresses could create threat to privacy).

Niskanen then alleges that "FERC fail[ed] to articulate that the threat to landowners' privacy [was] real rather than speculative." Pl. MSJ at 14; ECF. No. 21 (Pl. Reply) at 3. This argument, too, falls flat. Under FOIA, "once there is disclosure, the information belongs to the general public," not just the requester. See Nat'l Archives and Records Admin. v. Favis, 541 U.S. 157, 174 (2004). To that end, courts "must evaluate the risk of disclosing records to some particular FOIA requester not simply in terms of what the requester might to do with the information, but also in terms of what anyone else might do with it." Swan v. SEC, 96 F.3d 498, 500 (D.C. Cir. 1996). Although some individuals may be happy to reveal their home addresses, many are not. Those landowners also have a privacy interest in not divulging that a natural-gas pipeline crosses their property — for example, to avoid potential protests on their land. Disclosing their names and addresses could result in an unwanted surrender of their privacy.

2. *Public Interest*

On the other side of the scale, the only valid public interest in the FOIA context is one that serves the Act's purpose of shedding light on an agency's performance of its statutory duties. See Reporters Comm., 489 U.S. at 773. "'[I]nformation about private citizens . . . that reveals little or nothing about an agency's own conduct' does not serve a relevant public interest under FOIA." Consumers' Checkbook Ctr. for the Study of Servs. v. HHS, 554 F.3d 1046, 1051 (D.C. Cir. 2009) (quoting Reporters Comm., 489 U.S. at 773). The requester has the burden of establishing the public interest. See Carter 830 F.2d at 390 n.8, 391 n.13.

Here, Plaintiff seeks to shed light on whether FERC is enforcing its public-notice mandate. See Pl. MSJ at 15–20. Put otherwise, it asserts that the public is interested in whether Defendant is ensuring that ACP is properly notifying affected landowners of the construction of a pipeline through their properties. Id.; see also Hearing Transcript at 2:24–25, 3:1. To be sure,

8

the Court concurs that such an interest is legitimate. The question at this point, however, is whether Niskanen needs all the information it seeks — i.e., full names and full addresses — to evaluate FERC's conduct.

As mentioned above, Defendant offered to release the initials and street names (but not exact addresses) of all private landowners. See JSR at 2. The Court concludes that this limited disclosure appropriately balances the competing considerations here. For example, Niskanen could "do a cross comparison between FERC's landowner list and the landowners along the pipeline route" using public records like tax rolls. See Hearing Tr. at 2:25, 3:1, 9:1–4. Having initials and street names would be sufficient to accomplish this task. Similarly, Plaintiff could count the properties within 50 feet of the pipeline route and compare that with FERC's disclosure to ensure completeness. (Truth be told, the latter could be done even without initials, but the agency has already agreed to a limited disclosure.) Either method would allow Plaintiff to determine whether ACP is notifying all affected landowners, as the agency requires. Of course, this may prove more onerous than if Plaintiff had received the specific landowner names and addresses, rather than just their initials and streets, but the Court's role is not simply to facilitate Niskanen's disclosure interest. It is also tasked with giving due weight to the landowners' privacy interest. The proposed limited disclosure here is a just outcome, for it protects the privacy interests of thousands of affected landowners — by withholding additional personal information — without sacrificing the public's interest in disclosure.

B. Segregability

One issue remains. FOIA requires that any "reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Generally, the agency must provide "a 'detailed justification' and

not just 'conclusory statements' to demonstrate that all reasonable segregable information has been released." Valfells v. CIA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010); see also Armstrong v. Exec. Office of the President, 97 F.3d 575, 578 (D.C. Cir. 1996) (determining government affidavits explained non-segregability of documents with "reasonable specificity"). Here, because the Court is ordering FERC to provide a fuller disclosure of the landowner lists, all that is withheld are the full names and street numbers of the landowners. No further segregation is possible or required here.

**IV.     Conclusion**

For these reasons, the Court will deny Plaintiff's Motion for Summary Judgment and grant Defendant's Motion. A separate Order consistent with this Opinion will be issued this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: January 15, 2020